FILED
SUPERIOR COURT
OF GUAM

2018 FEB -2 PM 3: 10

CLERK OF COURT

By:

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DFS GUAM L.P., <br><br> Plaintiff, <br><br> v. <br><br> THE A.B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM, and DOE DEFENDANTS 1-10, INCLUSIVE, <br><br> Defendants. | CIVIL CASE NO. CV 0943-14 <br> (Consolidated with <br> CV 0094-15 and CV 0198-15) <br><br><br> **DECISION AND ORDER ON AIAA'S MOTION FOR SUMMARY JUDGMENT NO. 3 (THIRD PROTEST)** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on November 30, 2017, upon A.B. Won Pat International Airport Authority, Guam's Motion for Summary Judgment No. 3 (Third Protest). Plaintiff DFS Guam L.P. ("DFS") is represented by Attorneys Patrick Civille, Jay Srinivasan, and Maurice Suh. Attorneys Kathleen Fisher, Genevieve Rapadas and Jay Trickett represent Defendant A.B. Won Pat International Airport Authority, Guam ("AIAA").

AIAA's Motion for Summary Judgment is the third of three motions for summary judgment filed by AIAA, and the third of four motions for summary judgment heard by the Court. AIAA requests summary judgment for the entirety of DFS's third complaint on the basis of four arguments: (1) AIAA did not violate the "automatic stay" provision of the Procurement Code because the Third Protest was submitted after the award to Lotte; (2) DFS does not have any standing to bring any claims under AIAA's enabling statute because the statute does not create any private causes of action; (3) the Court does not have subject-matter jurisdiction to hear the Third Protest because DFS's untimely protest divests it of any standing; and (4)

AIAA's failure to adopt and promulgate non-airline lease and concession criteria would not render its concession agreement with Lotte *void ab initio*.

Having reviewed all of the pleadings and heard all oral arguments, for the reasons set forth below, the Court DENIES AIAA's Motion for Summary Judgment No. 3 (Protest 3).

## BACKGROUND

This case arises from a procurement dispute between DFS and AIAA. The Guam Legislature enacted the A.B. Won Pat International Airport Authority, Guam's enabling statute on September 24, 1992, as Public Law 21-135. The enabling statute was codified under Title 12 Guam Code Annotated Chapter 1.

The enabling statute required AIAA to establish a set of criteria dictating the operation of concessions at the airport property, and hold public hearings on those regulations within 90 days of the law becoming effective. AIAA created a preliminary draft of Non-Airline Lease and Concession Policies ("1995 Policies"), and held a public hearing regarding the 1995 Policies on October 19, 1995.

In 2001, AIAA issued a request for proposal ("RFP") to operate a specialty retail concession at the airport. DFS participated in the 2001 RFP as the sole bidder and submitted a question to AIAA regarding the 12 GCA § 1203.1 and its applicability. AIAA replied to DFS that "Furthermore, based upon information and belief, the 1995 Policies were not fully and properly adopted and promulgated in accordance with the Administrative Adjudication Law pursuant to 12 GCA § 1203.1(a)(ii)." Ada Decl. (MSJ 3) ¶ 4, Ex. 2 (Apr 13, 2017). AIAA awarded the concession contract to DFS and entered into an agreement on November 6, 2002.

AIAA held further RFPs for duty free concession contracts in 2006 and 2009. DFS bid for and won the concession contracts for both RFPs. The exemplar contract agreements and the contract agreements themselves had language stating: "The imposition of MAG Rent is consistent with the Authority's Non-Airline and Concession Lease Policies and the policies established by the [FAA], to which the Authority is subject." Ada Decl. (MSJ 3) Ex. 8, Ex. 9. The 2012 RFP exemplar contract held the identical language.

On July 19, 2012, AIAA issued the underlying Request for Proposals No. GIAA 010-FY12 ("2012 Procurement") being contested in this action. Both DFS and Lotte Duty Free Guam, LLC ("Lotte") submitted timely bids to AIAA. On April 12, 2013, AIAA announced Lotte as the most qualified proposer.

On April 23, 2013, DFS submitted a protest challenging the 2012 Procurement and AIAA's ranking of Lotte as the most qualified proposer (First Protest). DFS demanded that AIAA Management stay its negotiations with Lotte pursuant to 5 GCA § 5425(g), and AIAA Management and Lotte temporarily stopped their negotiations.

On May 17, 2013, AIAA denied DFS' First Protest based on the determination that the protest was filed past the statutory deadline and therefore, could not be considered. On May 18, 2013, AIAA and Lotte resumed contract negotiations, and the Specialty Retail Concession Agreement between AIAA and Lotte was signed that same day. On June 11, 2013, the AIAA Board of Directors ("Board") ratified the agreement entered into by AIAA and Lotte, as well as all other actions regarding the 2012 Procurement. On July 21, 2013, Lotte moved in to the airport main concession space.

On May 29, 2013, DFS submitted its second protest challenging AIAA's award of the procurement contract to Lotte (Second Protest). DFS supplemented its Second Protest on June 3, 2013, and AIAA denied DFS's Second Protest on January 13, 2015.

On May 30, 2013, DFS simultaneously filed a civil action in Superior Court Civil Case No. CV 0685-13 and an appeal with the Office of Public Accountability ("OPA") challenging AIAA's award of the specialty retail contract to Lotte based on the reasons set forth in DFS's First Protest. On July 21, 2013, the Superior Court dismissed DFS's case citing DFS's failure to exhaust administrative remedies. DFS Guam L.P. v. A.B. Won Pat Int'l. Airport Auth., 2014 Guam 12.

DFS submitted its third procurement protest ("Third Protest") to AIAA on June 7, 2013, seeking to void Lotte's award on the basis that AIAA failed to adopt 1995 Policies as required by the enabling statute. On February 5, 2015, AIAA denied the Third Protest, holding that DFS had not exhausted its administrative remedies.

On March 10, 2015, DFS filed its third lawsuit against AIAA and Lotte for the wrongful award of the duty-free concession contract under Superior Court Civil Case No. CV0198-15. The Court consolidated Superior Court Civil Case Nos. CV0943-14, CV0094-15, and CV0198-15, on July 19, 2016.

AIAA filed its Motion for Summary Judgment No. 3 (Third Protest) ("MSJ 3") with the Court on April 13, 2017. DFS filed its Opposition on September 29, 2017 and AIAA filed its Reply on October 20, 2017. This is the third of three Motions for Summary Judgment filed by AIAA[1].

The Court heard AIAA's Motion for Summary Judgment 3 during a hearing on November 30, 2017. At the conclusion of oral argument, the Court took this matter under advisement.

## DISCUSSION

In its Third Protest, and Complaint, DFS alleges that AIAA violated AIAA's enabling statute by not promulgating or adopting a set of non-airline lease and concession criteria. AIAA's enabling statute, codified in Title 12 of the Guam Code Annotated Chapter 1, states in relevant part:

> (a) Any agreement between the [AIAA] and any other party concerning the operation of a concession, other business or a service provider at [AIAA] shall conform to the following:
>> (i) allow for an exclusive right to sell certain goods or provide certain services only after a competitive proposal procedure, according to the General Services Administration rules and regulations, and for a duration of no longer than five (5) years (Any exclusive right for a duration of longer than five (5) years shall be given by [AIAA] to any party only upon subsequent approval by [the Guam Legislature] by statute.);
>> (ii) criteria established for the operation of a concession, other business or service provider at the [AIAA], which criteria shall be reviewed at a public hearing held within ninety (90) days of the effective date of this Section, and held in accordance with the Administrative Adjudication Law...

---

[1] AIAA filed three Motions for Summary Judgment with the Court. Motion for Summary Judgment No. 1 (First Protest) was filed on April 13, 2017, and argued on November 27, 2017. Motion for Summary Judgment No. 2 (Second Protest) was filed on April 13, 2017, and heard over November 28-29, 2017. Motion for Summary Judgment No. 3 (Third Protest) was filed on April 13, 2017, and heard on November 30, 2017.

12 GCA §§ 1203.1(a)(i),(ii).

AIAA requests summary judgment for the entirety of DFS's third complaint on the basis of four arguments: (1) AIAA did not violate the "automatic stay" provision of the Procurement Code because the Third Protest was submitted after the award to Lotte; (2) DFS does not have any standing to bring any claims under AIAA's enabling statute because the statute does not create any private causes of action; (3) the Court does not have subject-matter jurisdiction to hear the Third Protest because DFS's untimely protest divests it of any standing; and (4) AIAA's failure to adopt and promulgate non-airline lease and concession criteria would not render its concession agreement with Lotte *void ab initio*. As AIAA challenges jurisdiction in Arguments 2 and 3, the Court chooses to first address Arguments 3 and 2 in that order. A finding that the Court lacks jurisdiction would render analysis of Arguments 1 and 4 unnecessary. If the Court finds against AIAA's Arguments 2 and 3, the Court will examine Arguments 1 and 4.

## A. Standard for Adjudicating a Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Guam R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Rule 56(c) of the GRCP further mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.5. at 322. A genuine issue of material fact exists if there is sufficient evidence which establishes a factual dispute requiring resolution by a fact-finder. Guam Pac Enter., Inc. v. Guam Poresia Corp. et al., 2007 Guam 22 n.8 (citing Iizuka Corp. v. Kawasho Int'l (Guam). Inc., 1997 Guam 10 ¶ 7). The factual dispute must also concern a fact "that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." Id.

If the movant demonstrates a lack of a genuine issue of material fact, "the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some

significant probative evidence tending to support the complaint." Edwards v. Pacific Fin. Corp. et al., 2000 Guam 27 n. 7 (citations omitted). Thus, the ultimate inquiry for the Court is "whether the 'specific fact' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Bank of Guam v. Flores, 2004 Guam 25 n.7. In determining a motion for summary judgment, "the court must draw inferences and view the evidence in a light most favorable to the non-moving party." Id.

## B. Argument 3: The Court Does Not Have Subject-Matter Jurisdiction to Hear DFS'S Third Protest Because DFS's Untimely Protest Divests it of Any Jurisdiction

AIAA moves for summary judgment on all of DFS's claims arguing that, because DFS untimely submitted its Third Protest, the Court lacks subject-matter jurisdiction over this matter. Before the Court starts its analysis of the facts and arguments specific to MSJ 3, the Court lays out the structural framework through which the Court views this case. Although DFS filed the Third Protest separately from DFS's First and Second Protests, the same underlying controversy unifies all three Protests: did AIAA properly conduct their procurement? Thus, all three Protests, while having different specific facts and arguments, tie into a single timeline.

Guam's Procurement Code requires that a procurement protest "shall be submitted in writing within fourteen (14) days after such aggrieved person knows or should know of the facts giving rise thereto." 5 GCA § 5425(a). Consequently, any protests filed after the fourteen day period will not be considered. See 2 GAR, Div. 4 § 9101(c)(1). Further, the Procurement Code allows "[a]ny actual or prospective bidder, offeror, or contractor who may be aggrieved in connection with the method of source selection, solicitation or *award of a contract*" to file such protest. 5 GCA § 5425(a)(emphasis added).

DFS argued in its Opposition to AIAA's Motion for Summary Judgment No. 1 (First Protest) it did not become an "aggrieved person" under 5 GCA § 5425(a) until April 12, 2013, when AIAA announced that Lotte was the most qualified proposer. DFS Opp'n to AIAA MSJ 1 at 9-11 (Sept. 29, 2017). It is undisputed that AIAA revealed Lotte as the most qualified

proposer on Friday, April 12, 2013. However, it was not until Tuesday, April 16, 2013, that AIAA officially notified all the proposers of the results. Weiss Decl. (MSJ 1), Ex. 100. Thus, DFS, the Shilla Duty Free, and JR/Duty Free all had until Tuesday, April 30, 2013, to protest the award. Furthermore, AIAA Executive Manager, Charles Ada, and AIAA Supply Management Administrator, Franklin Taitano, clarified and confirmed that proposers had fourteen (14) calendar days after receiving notice of the results to file a protest. Id.; Weiss Decl. (MSJ 1), Ex. 99.

DFS submitted its Third Protest challenging the award to Lotte on April 23, 2013, raising "another new and independent basis for protesting this solicitation and award…". Weiss Decl. (MSJ 3) Ex. 13. Because DFS protested AIAA's award to Lotte, DFS, for the purpose of the Third Protest, did not become aggrieved until April 16, 2013. The Procurement Code allowed DFS until April 30, 2013, to file its Third Protest. Although DFS submitted its Third Protest on June 7, 2013, the Court does not find the Third Protest to be untimely.

Guam's Procurement Code states that "[i]n the event of a timely protest under Subsection (a) of this Section or under Subsection (a) of § 5480 of this Chapter, the Territory shall not proceed further with the solicitation or with the award of the contract prior to final resolution of such protest, and any such further action is void . . . ." 5 GCA § 5425(g). In Guam Imaging, Consultants, Inc. v. Guam Memorial Hospital Authority, the Supreme Court made clear the timeliness requirement of the automatic stay provision, stating that "the Guam Procurement Law . . . contain[s] automatic stay provisions that are triggered by timely protests," and that "a protest . . . be both factually timely and pursued before the award has been made in order to trigger the automatic stay [provision]." Guam Imaging Consultants, Inc. v. Guam Mem. Hosp. Auth., 2004 Guam 15 ¶ 23. In other words, AIAA would have violated the automatic stay provision mandated by 5 GCA § 5425(g) if DFS's protest was both factually timely and filed before the award to Lotte was made. See id. Further, the Supreme Court also clarified the finality requirement under 5 GCA § 5425(g) holding that the automatic stay provision remains in effect during "commencement of a civil suit within the Superior Court and continues until *final resolution* of the action by the Superior Court." Teleguam Holdings, LLC

v. Territory of Guam, 2015 Guam 13 ¶ 31 (emphasis added). DFS timely filed its First Protest on April 23, 2013, which triggered an automatic stay pursuant to 5 GCA § 5425(g). The automatic stay triggered by DFS's First Protest remains in effect today because the First Protest has not reached a final resolution.

The automatic stay triggered by the First Protest also affected the fourteen-day filing deadline for the Third Protest. An automatic stay pursuant to a statute tolls statutes of limitations. See Pac. Rock Corp. v. Dep't of Educ., 2001 Guam 21 ¶ 53 (the statute of limitations is tolled by the prerequisite of exhausting administrative remedies under the Procurement statutes); Bishop v. Apfel, 91 F.Supp.2d 893, 894 (W.D. Va., 2000) (the time limit for seeking judicial review of an administrative decision is subject to equitable tolling); see also Urban Renewal Auth. v. Dongbu Ins. Co., 2001 Gaum 24 at ¶¶ 10-14 (adopting the equitable tolling doctrine). DFS's time to file its Third Protest was tolled by the activation of the First Protest's automatic stay. Therefore, the Court finds that DFS timely filed its Third Protest. Accordingly, for reasons independent of any other decision the Court may render in this decision and order, the Court DENIES Argument 3 of AIAA's MSJ 3.

Although the Court finds the Third Protest to be timely, the Court, in the interest of directly addressing Argument 3, and accepts *agruendo* AIAA's assertion that the automatic stay ended on May 17, 2013. AIAA argues that DFS had known that AIAA had not promulgated the 1995 Policies for approximately 12 years. AIAA Mot. 13. AIAA states that the agency informed DFS that "the proposed [1995 Policies] were not fully and properly adopted and promulgated in accordance with the Administrative Adjudication Law pursuant to 12 GCA § 1203.1(a)(ii)." Ada Decl. (MSJ 3) Ex. 2. The agency also states that, during the 2001 RFP, AIAA informed DFS that the 1995 Policies had not been properly adopted and promulgated. AIAA further alleges that, in 1993, DFS confirmed to AIAA DFS's understanding that AIAA had not fully adopted and promulgated the 1995 Policies. Ada Decl. (MSJ 3) Exs. 4-5. AIAA also argues that DFS knowingly continued to participate in future RFPs. During the 2012 Procurement, DFS did not question the language in the exemplar contract referencing the 1995 Policies. All of these

facts suggest that DFS knew about the status of the 1995 Policies for over a decade, and had lost their ability to protest the fact that AIAA never adopted and promulgated the 1995 Policies.

DFS's Opposition paints a very different story to AIAA's. According to DFS, AIAA, "depending on which position served its immediate interests at a given time, [AIAA] has taken contradictory positions as to whether the [1995 Policies] actually were adopted." DFS Opp'n 4. DFS shows, in a memorandum from Oliver Bordallo, legal counsel to AIAA in Sept. 1995, to Steven B. Cruz, the Acting Executive Manager of AIAA as of Sept. 18, 1995, that "[a]t the [AIAA] Board of Director's Meeting on September 15, 1995, the subject Policies were approved with one exception." Weiss Decl. (MSJ 3) Ex. 1 at p. GIAAESI_0374235. The subject line of the memorandum reads "Final Revisions to Non-Airline Lease and Concession Policies and Schedule for Public Hearing". AIAA held the public hearing on October 19, 1995.

In April 1998, DFS shows that AIAA represented to the Guam Legislature that "[i]n 1995, [AIAA] finalized a non-airline lease and concession policy". Weiss Decl. (MSJ 3) Ex. 2 at 3. DFS alleges that AIAA changed their position during the 2001 RFP. AIAA sent DFS the aforementioned letter that explained to DFS that AIAA never properly adopted or promulgated the 1995 Policies. In June 2003, AIAA again reversed its position and sent DFS a letter stating "that their recently signed concession agreement needed to be amended because it violated § 1203.1 and the 1995 Concession Policies." DFS Opp'n 4 (citing Ada Decl. (MSJ 3) Ex. 4). In response, on June 27, 2003, DFS responded to AIAA stating that AIAA had taken the opposite stance during the 2001 RFP. DFS flatly denies that the June 27, 2003 Letter was an acknowledgement of and an assertion that that the 1995 Policies had not been adopted. Id.

Lastly, DFS shows that AIAA continued to hold the 1995 Policies as having been formally adopted as late as 2012. On May 8, 2012, AIAA counsel, Janalynn Cruz Damian, requested Airport Services Manager Jean Arriola to send her a final version of the 1995 Policies. Weiss Decl. (MSJ 3) Ex. 3. Ms. Arriola sent Attorney Damian the 1995 Policies a few hours later. Weiss Decl. (MSJ 3) Ex. 4. On June 6, 2012, Ms. Arriola sent a list of policies and regulations adopted by AIAA, which included an entry listed as "Non-Airline Lease and Concession Policy". Weiss Decl. (MSJ 3) Ex. 5.

The competing versions of events utilize identical exhibits and dates, but come to vastly different conclusions. The differing conclusions present material questions of fact of whether AIAA held themselves in a manner which would have led DFS to believe that the 1995 Policies were in effect, and the actual moment in time DFS knew that no non-airline lease and concession polices were enacted. Therefore, for reasons independent of DFS filing its Third Protest during the pendency of the First Protest's automatic stay, the Court DENIES Argument 3 of AIAA's MSJ 3.

**C. Argument 2: DFS Does Not Have Standing to Bring Claims Under AIAA's Enabling Statute Because the Statute Does Not Create Private Causes of Action**

"Standing is a threshold jurisdictional matter." Guam Image Consultants, 2004 Guam 15 ¶ 17 (citing Brewer v. Lewis, 989 F.2d 1021, 1025 (9th Cir. 1993)). Standing is a requirement of subject-matter jurisdiction that must be determined as of the date of filing of the complaint. Taitano v. Lujan, 2005 Guam 26 ¶ 15. The Court has no subject-matter jurisdiction over a case when a party lacks standing, and must dismiss the case. DFS Guam L.P., 2014 Guam 12 ¶ 14. The relevant question the Court must ask regarding standing is "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues." Benavente v. Taitano, 2006 Guam 15 ¶ 14 (citing Warth v. Seldin, 422 U.S. 490, 498 (1975)).

Guam's Supreme Court has the adopted traditional standing requirements which require parties to possess either statutory or common law standing. Hemlani v. Melwani, 2016 Guam 33 ¶ 18 (citing Benavente, 2006 Guam 15 ¶¶ 16-18) (citations omitted)). Firstly, under the common law standing requirement, a litigant may claim standing a litigant possesses what the US Supreme Court has called "the irreducible constitutional minimum of standing" under Article III of the US Constitution. Benavente, 2006 Guam 15 ¶ 15 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). A litigant may claim statutory standing when standing is expressly conferred by statute. Benavente, 2006 Guam 15 ¶ 15 (citing Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973)).

AIAA moves for summary judgment on DFS's Third to Seventh Causes of Action arguing that the DFS lack the statutory standing necessary to appear before the Court. The Court

lacks subject-matter jurisdiction over a plaintiff without standing. The Court examines Argument 2 starting with AIAA's arguments on statutory standing. If no statutory standing is found, the Court will examine whether DFS possesses common law standing to appear before the Court.

### 1. Statutory Standing

To begin the Court's analysis on statutory standing, "our analysis begins by examining if any statutory authority exists for the claims asserted." Id. at ¶ 21. The general principle of statutory analysis requires the Court to start with the plain language of the statutes. Teleguam, 2015 Guam 13 ¶ 18 ("Statutory interpretation always begins with the plain language of the statute.") see also Aguon v. Guteirrez, 2002 Guam 14 ¶6. The Court will hold to the plain meaning of the statutes in the absence of "clear legislative intent to the contrary". Teleguam. 2015 Guam 13 ¶ 18. To determine legislative intent, the Court must read a statute "as a whole" and "construe each section in conjunction with other sections." Sumitomo Constr. Co. v. Gov't of Guam, 2001 Guam 23 ¶ 17. DFS claims AIAA violated portions its enabling act under 12 GCA § 1203.1 by not adopting "criteria established for the operation of a concession, other business or service provider" at the Airport. 12 GCA § 1203.1(a)(ii). DFS also claims that AIAA violated 12 GCA § 1203(f) which allows AIAA to enter into contracts, leases and permits for usage of airport facilities. Lastly, DFS claims a violation of 5 GCA § 5001(b)(1), which enumerates the underlying purposes of the Procurement Code.

The Court first looks at the statutory language of 12 GCA § 1203.1(a)(ii) stated above. In Benavente, the statutes in question, 3 GCA § 12102 and 3 GCA § 16501, contained specific language allowing private parties to challenge decisions rendered by the Guam Election Commission. However, in the present matter, nothing in § 1203.1(a)(ii) or § 1203.1, as a whole, indicates the Legislature's intent on creating private causes of action from § 1203.1. The statute appears to require AIAA to establish a set of criteria to govern the operation of concessions, or other non-airline related businesses. The statute also sets a ninety-day time frame in which AIAA had to hold a public hearing about the non-airline lease and concession criteria. The

Court declines to find that § 1203.1 grants private parties causes of action to bring suit against AIAA.

The Court next looks at the statutory language of 12 GCA § 1203(f). Section 1203 lists the additional powers granted to AIAA. Subsection f grants AIAA authority to:

> Improve, construct or reconstruct, lease, furnish or refurnish, use, repair, maintain, control, sell or dispose of its property, including any buildings, structures, lighting equipment and all other equipment and facilities necessary therefor; and notwithstanding any other provision of law, make and enter into contracts, leases and permits for the use of airport facilities and properties for airport purposes, and visitor related activities, and make and enter into airline agreements, without prior approval of I Liheslaturan Guåhan, [Legislature] as long as these agreements are in conformity with the provisions of § 1203.1 of this Title.

12 GCA § 1203(f). Similar to the aforementioned § 1203.1(a)(ii) analysis, the Court sees no language authorizing private parties to challenge or bring suit against AIAA. Therefore, the Court declines to find that § 1203(f) grants private parties causes of action to bring suit against AIAA.

Lastly, the Court examines of 5 GCA § 5001(b)(1) for statutory standing. Section 5001 defines the purposes and the rules of construction of Guam's Procurement Code. Section 5001(b)(1) states in relevant part:

> (b) Purposes and Policies. The underlying purposes and policies of this Chapter are:
> (1) to simplify, clarify, and modernize the law governing procurement by this Territory;

Again, the Court looks to the language of § 5001(b)(1) for legislative intent. Unlike the statutes analyzed in Benavente, § 5001 includes no such language granting private parties to challenge or file suit against AIAA. Therefore, the Court declines to find that § 5001(b)(1) grants private parties causes of action to bring suit against AIAA.

While the Court agrees with AIAA that the three individual statutes, 12 GCA §§ 1203(f), 1203.1(a)(ii), and 5 GCA § 5100(b)(1) do not expressly grant standing to bring this suit, the Court must not overlook the Procurement Code from which the Court draws its authority. The Procurement Code codifies an appeals process for aggrieved bidders. Section 5425(a) grants

"[a]ny actual or prospective bidder, offeror, or contractor who may be aggrieved in connection with the method of source selection or award of contract, may protest to the Chief Procurement Officer, the Director of Public Works, or the head of the purchasing agency." 5 GCA § 5425(a). If the agency decides against the bidder's protest, the aggrieved bidder may appeal the agency decision to the Office of the Public Auditor. 5 GCA § 5425(e) ("A decision under Subsection (c) of this Section ... may be appealed by the protestant, to the Public Auditor within fifteen (15) days after receipt by protestant of the notice of decision."). Lastly, § 5425(f) allows "a person adversely affected by the decision [to] commence[] an action in the Superior Court in accordance with Subsection (a) of § 5480 of this Chapter." 5 GCA § 5425(f). DFS protests AIAA's conduct in the period before and during the 2012 Procurement. Similar to the election statutes examined in <u>Benavente</u>, the three cited subsections of § 5425 grant statutory standing for aggrieved parties to work their way up the ladder and argue their grievances before the agency, the OPA, and lastly, the Superior Court.

The Court looks to the timeline of undisputed facts. DFS filed its Third Protest on June 7, 2013, four days after receiving AIAA's response to DFS's Sunshine Act request. Weiss Decl. (MSJ 3) Ex. 13. On February 5, 2015, AIAA denied the Third Protest. Ada Decl. (MSJ 3) Ex. 12. With the OPA having recused herself from this matter on February 12, 2015[2], DFS filed their third complaint with the Court on March 10, 2015. <u>See generally</u> DFS Compl. (CV0198-15) (Mar. 10, 2015).

The Court now works backwards using the undisputed facts. DFS must possess standing at all stages of review. <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 67 (1997). DFS timely filed their Complaint on March 10, 2015. DFS need not meet the standing requirements for the OPA as the Court noted the OPA's recusal in its Decision and Order filed on June 6, 2016, in the fellow consolidated case CV 0094-15. <u>DFS Guam L.P. v. A.B. Won Pat Int't</u>

---

[2] The Court issued a Writ of Mandate on January 28, 2015, instructing the OPA to explain her September 30, 2014 Dismissal Order. The OPA filed her Response to Writ of Mandate on February 12, 2015, explaining her voluntary recusal "out of an abundance of caution, and without making a determination on the merits of the recusal requests and out of concern for the limited budgetary resource of the OPA...". Response to Writ of Mandate 3 February 12, 2015.

Airport Auth., et. al., Civil Case No. CV 0094-15, Decision and Order 3-5 (June 6, 2016). However, in its Decision and Order, the Court found that the OPA's recusal did not constrain the Court's subject-matter jurisdiction due to exhaustion of administrative remedies issues. Id. at 5. Furthermore, by simultaneously filing an appeal with the OPA and a civil action in the Superior Court, the Court finds that DFS preserved its right to appeal. Therefore, the Court finds the DFS meets the requirements to possesses statutory standing in the Superior Court pursuant to § 5425(f).

DFS initiated its Third Protest on June 7, 2013, as an actual bidder "who may be aggrieved" to protest "the method of source selection or award of contract". 5 GCA § 5425(a). The Court found above that DFS timely filed its Third Protest. Having satisfied both the substance and timeliness requirements of § 5425(a), the Court finds that DFS holds statutory standing under the Procurement Code to bring this matter. Accordingly, the Court DENIES summary judgment for Argument 2 challenging DFS's statutory standing.

## 2. Common Law Standing

The Court examines whether DFS possesses common law standing. Although the Court has already found statutory standing for DFS, the Court, in the interest of addressing all questions regarding standing, *sua sponte* examines whether DFS may assert common law standing. AIAA has not challenged DFS's common law standing before the Court. As DFS has had no opportunity to brief the issue of common law standing, the Court will not hold DFS proffer of evidence to the burden of proof a plaintiff must demonstrate to survive summary judgment: the burden of establishing standing by setting forth evidence of specific facts. Hemlani, 2016 Guam 33 ¶ 18 (citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 410-13 (2013). The Court will engage in a general examination not restricted to the exhibits submitted to support DFS's Opposition.

The Benavente court quoted the three-part test laid out by the United States Supreme Court in Lujan v. Defenders of Wildlife. The Lujan test requires plaintiffs to show:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.... Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be

fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61. DFS must show an actual or imminent injury that is traceable to AIAA and redressable by the Court. The Court applies the three-part Lujan test.

### a. Injury

DFS must demonstrate a an "injury in fact" meaning "an invasion of legally protected interest (a) concrete and particularized, and (b) not "conjectural or "hypothetical." Id. at 560. The Guam Legislature enacted the Procurement Code "to ensure the fair and equitable treatment of all persons who deal with the procurement system of this Territory." 5 GCA § 5001(a)(4). DFS alleged in its Third Protest Letter that "[t]he process undertaken by [A]IAA in connection with the solicitation and purported award of RFP violated 12 GCA § 1203.1, and was therefore an unauthorized exercise of agency power and is invalid *ab initio*." Weiss Decl. (MSJ 3) Ex. 13. DFS's Complaint also alleges that "DFS and other proposers, other than Lotte, were deprived of their right to a full and fair consideration of their respective proposals..." DFS Compl. (CV0198-15) ¶ 55. Therefore, the Court finds that DFS had a legally protected interest to participate in a fair and equitable procurement guided by a legislatively approved process.

DFS must also show a concrete invasion of its legally protected interest. "Abstract, intellectual problems," FEC v. Akins, 524 U.S. 11, 20 (1998), "abstract concern," Diamond v. Charles, 476 U.S. 54, 67 (1986), and "[a]bstract injury," Los Angeles v. Lyons, 461 U.S. 95, 101(1982), do not present concrete injuries. However, concrete does not mean tangible as intangible harms such as the effects of defamation or the deprivation of rights could be concrete enough to be an injury in fact. Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1549 (2016). The Court finds that the deprivation of DFS's right to a full and fair consideration of its proposal constitutes an intangible harm sufficiently concrete to satisfy the Court.

DFS must demonstrate a particularized harm. DFS must show "that [DFS] has sustained or is immediately in danger of sustaining a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public." Lujan, 504 U.S. at 575 (quoting *Ex parte* Levitt, 302 U.S. 633, 634 (1937)). Although DFS's complaint

includes a statement that "[A]IAA's conduct thus deceived Guam public officials and employees and the Guam public that the 2012 Procurement was being administered in a fair, neutral and even-handed manner...", DFS Compl. (CV0198-15) ¶ 30, DFS also alleges a particularized harm to DFS and the other unsuccessful proposers. AIAA failed to evaluate the 2012 Procurement proposals according to legislatively mandated criteria and conducted an unfair procurement. Id. at ¶ 55-56. The Court finds that DFS satisfies the element of particular injury.

Lastly, DFS must show that the harm was actual or imminent, and not conjectural or hypothetical. Lujan, 504 U.S. at 560. The undisputed facts show that AIAA selected Lotte as the most responsive bidder on April 12, 2013. AIAA and Lotte later entered into a concession contract and Lotte, to this day, operates AIAA's duty free concession. DFS's injury changed from an imminent injury to an actual injury when AIAA's alleged improper administration of the 2012 Procurement culminated in Lotte's selection as the winner. Therefore, the Court finds that DFS sufficiently demonstrates actual harm and satisfies the Injury element of the Lujan test.

### b. Causation

To satisfy the Causation element, DFS must show that DFS's injury could be "fairly traceable to the challenged action". Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010) (citing Horne v. Flores, 557 U.S. 433, 445 (2009)). DFS challenges AIAA's violation of the Guam Legislature's mandate in 12 GCA § 1203.1. AIAA's violation led to the improperly administered procurement process, one not guided by a mandated non-airline lease and concession policy. The Court assumes DFS's allegations for the sake of argument. The Court agrees that DFS's deprivation of a fair and equitable procurement can be traced to AIAA's failure to adopt and promulgate a non-airline lease and concession policy. Therefore, the Court finds that DFS satisfies the Causation element of the Lujan test.

### c. Redressability

To satisfy the Redressability element, DFS must show that DFS's injury can be "redressed by a favorable ruling." Lujan, 504 U.S. at 560 (citing Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 38 (1976). DFS requests declaratory judgment and asks the

Court to declare AIAA's RFP as invalid and against the law. DFS Compl. (CV0198-15) 15. DFS also asks the Court to void AIAA's 2012 Procurement and AIAA's duty free concession contract with Lotte. Id. If DFS were to prevail, the Court would declare AIAA's 2012 Procurement void and cancel the procurement and Lotte's contract. As the duty free concession area represents a valuable source of revenue for AIAA, AIAA would be forced to procure another operator for the airport duty free concession area. If AIAA wishes to comply with Public Law 21-135[3], the public law that codified 12 GCA § 1203.1, AIAA must adopt and promulgate a set of non-airline concession and lease policies, such as the 1995 Agreement, prior to another attempt at procuring an operator. The adopted and promulgated policies would ensure DFS, should they chose to participate, a fair and equitable procurement solicitation. Therefore, the Court finds that DFS's injury could be redressed by a favorable ruling, and finds that DFS satisfies the Redressability element of the Lujan test.

After an examination of the three elements of the Lujan test, the Court finds that DFS satisfies all the requirements to possess common law standing. Therefore, the Court finds that the Court holds subject-matter jurisdiction in this matter. Accordingly, the Court, for reasons independent of finding statutory standing, DENIES AIAA's Argument 2, which alleges the Court's lack of subject-matter jurisdiction for want of standing by DFS.

**D. Argument 1: AIAA Did Not Violate the Automatic Stay Provision of the Procurement Code Because the Third Protest was Submitted After the Award to Lotte**

Guam's Procurement Code and regulations allow interested parties to challenge an agency's solicitation process or the agency's award. 5 GCA § 5425(a); 2 GAR § 9101(a). Interested parties must file their protests "in writing within fourteen (14) days after such aggrieved person knows or should know of the facts giving rise thereto." 5 GCA § 5425(a). A timely protest made before an award triggers the Procurement Code's automatic stay provision

---

[3] The Court examines 12 GCA § 1203.1 and Public Law 21-135 in much greater detail within the analysis of AIAA's Argument 4.

prohibiting the agency from proceeding with the procurement until the protest reaches a final resolution. 5 GCA § 5425(g); 2 GAR § 9101(e).

Earlier in this Decision, the Court set April 16, 2013 as the date DFS reached aggrieved status for its First Protest. DFS timely submitted its First Protest, which triggered the Procurement Code's automatic stay provision. The Court also found above that the automatic stay pursuant to the First Protest remains in effect because the First Protest has not reached a final resolution. Mindful of these findings, the Court examines the facts presented by the parties for this motion.

The parties agree on several undisputed events. The parties agree that AIAA revealed Lotte as the most qualified bidder during a Board meeting held on April 12, 2013. Secondly, the parties agree that DFS filed its First Protest on April 23, 2013. AIAA investigated DFS's First Protest and issued a written denial of the First Protest on May 17, 2017. AIAA and Lotte concluded their negotiations for a concession contract the following day on May 18, 2013, and publically announced the conclusion of the negotiations in a memorandum issued on May 20, 2013. On May 29, 2013, DFS filed its Second Protest with AIAA. On May 30, 2013, DFS filed a civil action with the Superior Court of Guam and a procurement appeal with the OPA. The parties also agree that DFS filed its Third Protest on June 7, 2013. Lastly, the parties agree that the Board approved all of AIAA's procurement-related activities during a special Board meeting held on June 11, 2013.

The automatic stay triggered by the First Protest requires the Territory to "not proceed further with the award or with the award of the contract prior to final resolution of such protest, and any such further action is void..." 5 GCA § 5425(g). Although required to stop all procurement-related activities, AIAA proceeded to negotiate with Lotte. Regardless of when the purported award to Lotte occurred, AIAA did so during the pendency of the First Protest's automatic stay.

The Court also expresses concern over AIAA's actions after denying DFS's First Protest. On Friday, May 17, 2013, AIAA denied DFS's First Protest. DFS simultaneously filed a civil action with the Superior Court and an appeal with the OPA on May 30, 2013. By filing

an appeal with the OPA within the statutorily allotted fifteen days, DFS preserved its rights to an appeal to the OPA. Under Teleguam, AIAA should have refrained from taking action until after the fifteen-day appeal period elapsed, after having made sure DFS did not file an appeal to the OPA. Teleguam, 2015 Guam 3 ¶ 31. However, AIAA concluded for itself that the agency's denial gave finality to the First Protest. AIAA resumed its negotiations on Saturday, May 18, 2013, and on the same day, reached an agreement with Lotte. The Court asks the following question: Did AIAA give DFS a meaningful opportunity to appeal the denial of the First Protest to the OPA, as was their right? The Court recognizes that AIAA did not have the benefit of guidance from the Supreme Court's Teleguam decision.

AIAA moves for summary judgment on DFS's First and Second Causes of Action. The Court finds that, because DFS filed timely its Third Protest during the pendency of the First Protest's automatic stay, DFS filed its Third Protest during the pre-award phase of the 2012 Procurement. Accordingly, the Court DENIES AIAA's Argument 1 of MSJ 3.

**E. Argument 4: AIAA's Failure to Adopt and Promulgate Non-Airline and Concession Criteria Would Not Render its Concession Agreement with Lotte *Void Ab Initio***

AIAA moves for summary judgment arguing that, because AIAA followed the Procurement Code, a failure to adopt and promulgate a set of non-airline and concession criteria would not render Lotte's contract void *ab initio*. AIAA engages in lengthy analysis of 12 GCA §§ 1105, 1203.1(a)(1), and 1203.1(a)(2), to argue AIAA's adherence to the Procurement Code. The Court examines Argument 4 starting with AIAA's claimed adherence to the Procurement Code and AIAA's enabling statute.

The Court agrees with AIAA that § 1105(h) grants AIAA with the ability to enter into concession agreements with concessionaires. However, the Court disagrees with AIAA's analysis of § 1203.1(a)(2). AIAA argues that § 1203.1(a)(2) "requires that a concession agreement conform with the 'criteria established for the **operation** of a concession, other business or service provider at the [AIAA].'" AIAA Mot. 17 (citing 12 GCA § 1203.1(a)(2)) (emphasis added). A holistic reading of § 1203.1 suggests that the Guam Legislature required

AIAA to submit a set of proposed guidelines and policies governing the non-airline related concessions activities of the airport to the Legislature for approval. The proposed guidelines and policies would include rules governing the solicitation of concession contracts. After receiving legislative approval, AIAA would be required to promulgate the guidelines and policies to the public.

A look at Public Law 21-135 and the legislative process leading to the passage of Public Law 21-135 supports the Court's reading of § 1203.1. The Committee on Ways and Means intended to require AIAA to establish non-airline concession-related rules and regulations. Guam Leg. Comm. on Ways and Means, P.L. 21-135, Comm. Rep. at 27 (1992). ("It provides that [AIAA] **must** establish criteria by rules and regulations according to the Administrative Adjudication Law to provide for the operation of a concession, other business, or service provider at the airport terminal." (emphasis added)). The Committee also agreed during its work sessions that "[AIAA] should form a set of rules and regulations to govern the agreements made between [AIAA] and concessionaires, other businesses and service providers, to give the public and the business community expected criteria and standards for doing business at the new facility." Id. The Committee's use of the phrase, "agreements made between [AIAA] and concessionaires, other businesses and service providers", supports the Court's rejection of AIAA's narrow definition of the word "operation". If the Legislature intended AIAA's non-airline lease and concession policy to govern agreements between AIAA and concessionaires, naturally the steps taken to reach the agreements between the parties would fall within the purview of such a policy.

The Court rejects AIAA's argument that AIAA's failure to adopt criteria would not have any relevance to the 2012 Procurement process. On the contrary, AIAA's failure to adopt the required criteria deprived all of the proposers the opportunity to have their bids reviewed in accordance with the Legislature's wishes. AIAA's shortcomings violate the Legislature's mandate in Public Law 21-135. As AIAA admits to not adopting or promulgating a set of non-airline lease and concession criteria, AIAA conducted a non-conforming procurement and

ultimately entered into a non-conforming concession contract with Lotte. Therefore, the Court finds that AIAA conducted the 2012 Procurement in violation of 12 GCA § 1203.1(a).

The Procurement Code grants the Court the authority to set aside or cancel a procurement conducted in violation of law. Because DFS timely submitted a pre-award protest, the Procurement Code requires the Court to either cancel the non-conforming solicitation or proposed award, or to revise the award to comply with the law. 5 GCA § 5451. Therefore, the Court finds that AIAA's argument that the Court may not void Lotte's contract *ab initio* fails as a matter of law. Accordingly, the Court DENIES AIAA's Argument 4 of MSJ 3.

## CONCLUSION

For the reasons set forth above, Therefore, the Court finds DFS timely filed its Third Protest. Accordingly, the Court DENIES Argument 3 of AIAA's MSJ 3.

For the reasons set forth above, the Court finds that DFS holds statutory standing under the Procurement Code and common law standing to bring this matter. Accordingly, the Court DENIES summary judgment for Argument 2 challenging DFS's statutory standing.

For the reasons set forth above, the Court finds that, because DFS filed timely its Third Protest during the pendency of the First Protest's automatic stay, DFS filed its Third Protest during the pre-award phase of the 2012 Procurement. Accordingly, the Court DENIES AIAA's Argument 1 of MSJ 3.

For the reasons set forth above, the Court finds that AIAA's argument that the Court may not void Lotte's contract *ab initio* fails as a matter of law. Accordingly, the Court DENIES AIAA's Argument 4 of MSJ 3.

Having DENIED all four arguments brought by AIAA, for the reasons set forth above, the Court DENIES AIAA's Motion for Summary Judgment 3 (Third Protest).

FEB 0 2 2018

**IT IS SO ORDERED** this _____.

SERVICE VIA COURT BOX
I acknowledge that a copy of the
original hereto was placed in the
court box of:
Civille, Post
CKT, Calvo
Date 2/2/18 Time: 3:30pm
Jerimie K.C. James
Deputy Clerk, Superior Court of Guam

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**